IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

VINCENT CANNADY,            )
                            )
            Plaintiff,      )
                            )
vs.                         )   Case No. 07-5054-CV-SW-ODS
                            )
FIRST COMP,                 )
                            )
            Defendant.      )

ORDER AND OPINION GRANTING MOTION FOR SUMMARY JUDGMENT

Pending is Defendant First Comp's Motion for Summary Judgment (Doc. # 102) on Plaintiff's remaining claims for employment discrimination. Plaintiff brings his claims for race and disability discrimination pro se under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA").[1] For the following reasons, Defendant's Motion is granted.

I. BACKGROUND

Plaintiff is an African-American male residing in southwestern Missouri. He has many years of experience in the field of computer programming. In 2006, Plaintiff was heavily recruited for a position in Defendant's Information Technology ("IT") department by Greg Jackson, a staffing recruiter at WorldBridge Partners, a recruiting firm. Plaintiff initially applied for the position of "Senior Programmer Analyst" but the position was closed prior to his interview; accordingly, Plaintiff eventually interviewed for the entry-level position of "Programmer Analyst."

On August 31, 2006, Plaintiff drove to Kansas City International airport for a 6 p.m. flight to Omaha, Nebraska, where Defendant is located. Plaintiff had an interview

---

[1] The Court previously dismissed Plaintiff's age discrimination claim filed under the Age Discrimination in Employment Act and his race discrimination claims filed under 42 U.S.C. §§ 1983, 1985, and 1986. See Doc. # 61.

scheduled to take place on September 1, 2006. Plaintiff missed his flight out of Kansas City, and his recruiter, Mr. Jackson, told Plaintiff he should drive the rest of the way, rather than reschedule the interview, because the "Director" would only be in town for one day. Plaintiff states that he was reluctant to make the drive, but agreed after Mr. Jackson promised him he would get the job, and that the Defendant "only wanted to make sure he was not a 'drooling idiot.'" Doc. # 16, p. 14.

Plaintiff was involved in a serious car accident while driving to Omaha. On September 1, 2006, Plaintiff called the recruiting firm from the hospital to inform them of his accident. He was told that Defendant would still be interested in hiring him if he could get there. Plaintiff said he was barely able to get out of bed and could not walk, but he was informed that "they had another employee who is temporarily disabled and they were accommodating him." Doc. # 16, p. 15. Plaintiff informed Laura Riley, Defendant's Human Resources Representative, that his foot was broken in four places and dislocated and his dominant hand was broken, so his spouse would be accompanying him to the interview. The day before his interview, now scheduled for September 14, 2006, Plaintiff drove to Omaha with his family. Plaintiff requested a wheelchair from Mr. Jackson for use during the interview. The next day, Plaintiff arrived at Defendant's building being pushed in a wheelchair by his wife.

Before his interview, Plaintiff took a personality test. He was told that "he was just the kind of candidate First Comp was looking for, and that the interview was a formality." Doc. # 116, p. 16. Laura Riley told Plaintiff she was going to begin working on his "Offer letter." Id. Plaintiff was originally scheduled to interview with Jim O'Halloran, the Vice President of IT. However, Mr. O'Halloran had a conflict so Lance Stapes, Program Manager in IT, interviewed Plaintiff in his place. Plaintiff was also interviewed by Andrew Harris, the Director of Information Systems; Phil Stencel, the Senior Programmer Analyst; and Chris Seim, a System Analyst.

Plaintiff states that while he was interviewing with Andrew Harris, Mr. Harris stated in reference to the Indian contractors working in the IT department, that "Indian contractors were disposable." Doc. # 116, p. 16. Additionally, Phil Stencel told Plaintiff "do not try to make me like you because no matter what you do I will not like you." He

2

also told Plaintiff that he had no questions for Plaintiff since he (Mr. Stencel) "was new to Coldfusion Programming and the Plaintiff's resume speaks for itself." Doc. # 116, p. 17. Plaintiff additionally states that someone called him a "black cowboy" and asked why he lived in such a remote area in Missouri. Doc. # 116, p. 11.

Following Plaintiff's interviews, Mr. O'Halloran reviewed the written evaluations completed by Mr. Stencel, Mr. Harris, and Mr. Staples. Each evaluation indicated that during the interview Plaintiff spent considerable time talking negatively about former employers and managers. Mr. Stencel noted Plaintiff's frequent job changing. Mr. Harris noted Plaintiff's desire to work alone rather than as part of a department team. Mr. Stapes relayed Plaintiff's statement that he "knew a trick" that he uses to "see the code of any company that uses ColdFusion" to "screen" potential employers to determine their technical capability. During the interview he further stated that he "used this trick to see if the prospective company had good enough programmers before he wasted his time in traveling 600 miles for nothing." Doc. # 83, p. 3-4.

After reviewing the evaluations, Mr. O'Halloran decided not to offer Plaintiff a programmer analyst position. Mr. O'Halloran states that he "never met Plaintiff at any time" and "had no knowledge of his race, broken ankle and wrist, casts or wheelchair use at the time he made the decision not offer him employment at FirstComp." O'Halloran Aff., Doc. # 103, Exh. A, ¶ 7. Plaintiff alleges that he and his wife "clearly saw Mr. O'Halloran as they entered the IT Department, Mr. O'Halloran saw the Plaintiff was Black as he stood in the door of someone's Office." Doc. # 116, p. 18. A few days later, after returning home, Greg Jackson informed Plaintiff that he had not gotten the job because Defendant thought he was "arrogant and lacked humility." Four programmer analysts were ultimately hired by Mr. O'Halloran between October 2006 and February 2007. The record does not provide the race or disabled status of the individuals hired.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a

3

showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Get Away Club, Inc. v. Coleman, 969 F.2d 664 (8th Cir. 1992). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. DISCUSSION

*A. ADA Claim*

The ADA prohibits an employer from discriminating against an individual "because of the disability of such individual." Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 686 (8th Cir. 2003) (quoting 42 U.S.C. § 12112(a)). Plaintiff alleges that he was discriminated against on the basis of a disability when he was not hired for the job with Defendant after interviewing with casts on and while in a wheelchair. Where there is no evidence of direct discrimination based on disability, courts must analyze ADA claims under the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Rehrs v. IAMS Co., 486 F.3d 353, 356 (8th Cir. 2007) (citing Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1044 (8th Cir. 2005)). Under this framework, a plaintiff has the initial burden of establishing a prima facie case showing he "(1) had a disability within the meaning of the ADA; (2) was qualified, with or without reasonable accommodation, to perform the essential job functions of the position in question; and

4

(3) suffered an adverse employment action because of said disability." Rehrs, 486 F.3d at 356. If a plaintiff establishes a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employer's actions." Id. If the employer meets this requirement, the burden shifts back to the plaintiff to show the employer's articulated legitimate, nondiscriminatory justification is a pretext. Id.

In this case, the Court will assume, without finding, that Plaintiff has established a prima facie case that Defendant discriminated against him based on a disability. However, the Defendant has articulated more than one legitimate, nondiscriminatory reason for not hiring Plaintiff. Specifically, Mr. O'Halloran was informed of several comments made by Plaintiff during his interviews that would make him unattractive to a potential employer. Most notably, Mr. Stapes stated that during his interview Plaintiff told him he had used a "trick" that he knew to view the computer code of Defendant in an effort to assess Defendant's technical capability "before he wasted his time in traveling 600 miles for nothing." Plaintiff admits making this statement, he just denies that he was "hacking" into the Defendant's system, as Defendant characterizes the action.

"A district court may not second-guess an employer's valid, nondiscriminatory employment decisions." Arnold v. Nursing and Rehab. Ctr. at Good Shephard, LLC, 471 F.3d 843, 846 (8th Cir. 2006). Plaintiff argues his actions were benign and should not be deemed "hacking." However, Defendant's decision to not hire Plaintiff for using "tricks" to view its private computer code is reasonable, and the Court will not second-guess it. Thus, the burden shifts to Plaintiff to establish Defendant's stated justification was a pretext for discrimination. Plaintiff's effort at establishing pretext includes the fact that (1) he was heavily recruited by Defendant, through an independent recruiting firm, (2) that he was told the interviews were just a formality, (3) that he was assured he would get the job, and (4) that he is an expert in his field. However, even if Plaintiff was an attractive candidate before his interviews, the statements he made during his interviews would very likely change an employer's mind. Therefore, because Plaintiff does not provide evidence that creates a material factual dispute as to whether Defendant's nondiscriminatory reason for its decision was a pretext, Defendant's motion

5

for summary judgment on Plaintiff's ADA claim is granted.

*B. Title VII Claim*

Title VII makes it unlawful for an employer to refuse to hire an individual because of that individual's race. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a violation of Title VII through either direct or indirect evidence. Twymon v. Wells Fargo & Co., 462 F.3d 925, 933 (8th Cir. 2006). "Direct evidence is evidence that establishes a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision." Id. (internal quotations omitted). "Direct evidence does not include stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself." Id. (internal quotations omitted).

Plaintiff asks the Court to infer a discriminatory motive from several statements and actions by Defendant: (1) Andrew Harris's statement that "Indian contractors are disposable"; (2) Phil Stencel's statement to Plaintiff, "do not try to make me like you because no matter what you do I will not like you"; (3) someone calling Plaintiff a "black cowboy" and asking him why he lived in such a remote area in Missouri; (4) Jim O'Halloran being too busy to interview Plaintiff as planned; and (5) Defendant's statement to Greg Jackson that he was not offered the job because he "was arrogant and lacked humility."

First, Mr. Stencel's statement that he would not like Plaintiff no matter what, and the statement that Plaintiff was arrogant and lacking in humility, do not appear to implicate race at all. "Facially race-neutral statements, without more, do not demonstrate racial animus on the part of the speaker." Id. (citing Putman v. Unity Health Sys., 348 F.3d 732, 735 (8th Cir. 2003) (noting that statements that plaintiff was "not humble enough" and was "too prideful" were facially race-neutral and were not direct evidence of discrimination)).

Second, Mr. Harris's statement that Indian contractors were disposable does not reflect racial animus towards Plaintiff, who is African-American. Additionally, Mr. Harris

6

did not decide not to hire Plaintiff; Jim O'Halloran made the decision not to hire Plaintiff and he did not make the statement. The statement is best characterized as a stray remark made by a non-decisionmaker, and is therefore not direct evidence of discrimination. Likewise, the unattributed statement that Plaintiff was a "black cowboy," while referencing Plaintiff's race, does not suggest that the speaker held animus toward African-Americans. Even if the statement was derogatory, however, it was not made by Jim O'Halloran. Therefore, it can also be described as a stray remark made by a non-decisionmaker. Furthermore, Plaintiff provides no evidence that any racial bias held by his interviewers would have influenced Mr. O'Halloran's decision.

Finally, Plaintiff construes Jim O'Halloran's failure to meet with Plaintiff as originally planned as a discriminatory act. However, Mr. O'Halloran's affidavit states that he had a scheduling conflict that prevented him from conducting the interview. O'Halloran Aff., Doc. # 103, Exh. A, ¶ 1. Plaintiff provides no evidence to the contrary. Mr. O'Halloran's affidavit also states that he never met with Plaintiff at any time and had no knowledge of Plaintiff's race, broken ankle and wrist, casts or wheel-chair use at the time he made his decision not to hire Plaintiff. Id. ¶ 8. Plaintiff disputes this assertion, stating he and his wife clearly saw Mr. O'Halloran standing in the doorway of someone's office as they entered the IT department and that Mr. O'Halloran saw Plaintiff. Doc. # 116, p. 18. However, even if Plaintiff is correct, that does not support an inference that Mr. O'Halloran knew that the individual he saw was the same person referenced in the interview forms he later evaluated. Accordingly, the Court concludes Plaintiff has failed to produce direct evidence of discrimination.

When there is no direct evidence of discrimination, courts analyze Title VII race discrimination claims under the same burden-shifting framework set forth in McDonnell Douglas. See Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The initial burden is on the plaintiff to establish a prima facie case of race discrimination. Id. To meet this burden in a failure to hire claim, a plaintiff must show "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that despite his qualifications, he was rejected; and (iv) that after his rejection, the position remained open and the employer continued to seek applicants

7

from persons of complainant's qualifications." McDonnell Douglas, 411 U.S. at 802; Chambers v. Wynne Sch. Dist., 909 F.2d 1214, 1216 (8th Cir. 1990). If a plaintiff establishes a prima facie case, creating a presumption of discrimination, the burden shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory basis for its action. If a defendant meets its burden, plaintiff must establish that the defendant's stated justification for its decision is a pretext for discrimination. Hill v. St. Louis University, 123 F.3d 1114, 1119 (8th Cir. 1997).

As discussed in reference to Plaintiff's ADA claim, Defendant articulated more than one legitimate, non-discriminatory reason for not hiring Plaintiff. In response, Plaintiff has not provided evidence that would allow a reasonable jury to conclude that Defendant's stated reason for refusing to hire Plaintiff was a pretext for racial discrimination. Therefore, Defendant's motion for summary judgment on Plaintiff's Title VII claim is granted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

                                              /s/ Ortrie D. Smith
                                              ORTRIE D. SMITH, JUDGE
DATE: April 20, 2009                  UNITED STATES DISTRICT COURT

8

Case 3:07-cv-05054-ODS   Document 121   Filed 04/20/09   Page 8 of 8